

THE ATTORNEY GENERAL
OF TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL.

AUSTIN 11, TEXAS

Railroad Commission of Texas
Austin, Texas

Gentlemen:

Opinion No. 0-3558
Re: Effect of a carrier's partially ceas-
ing operations.

You have submitted to us for our opinion the following six questions with accompanying explanation:

"After due notice to all interested parties, and to the public generally, the Commission, on August 28, 1939, approved the application of Ralph Labutis, R. M. Hansen, and Paul E. Dahlman, doing business as Texas Film Service, to amend and consolidate certain certificates authorizing the operation of a restricted common carrier motor carrier service transporting moving picture films and supplies only between Dallas, Texas, and San Antonio, Texas, via Waxahachie, Midlothian, Venus, Alvarado, Grand View, Itasca, Hillsboro, Waco, Georgetown, Austin, and New Braunfels; and between San Antonio, Seguin, and New Braunfels, serving all intermediate points; providing for a schedule of one round trip daily between Dallas and San Antonio, Texas, via Waxahachie, Midlothian, Venus, Alvarado, Grand View, Itasca, Hillsboro, Waco, Georgetown, Austin, and New Braunfels; and for irregular schedules from San Antonio to Seguin to New Braunfels, and between Dallas and Midlothian, via Duncanville and Cedar Hill over State Highway No. 67; and an irregular schedule from Waxahachie to Hillsboro, via Italy, over State Highway No. 77.

"In authorizing such service, the Commission found, from the evidence, that the movement of motion picture films and supplies requires an especially expedient service, and that public convenience and necessity demand and require the granting of such application.

"The service rendered by Texas Film Service under the certificate issued by the Commission is only to motion picture houses and distributors, and such certificate is so expressly restricted.

"The Commission is informed that there are only two motion picture establishments in Seguin, Texas; and that, for

some months past, the operator of such establishments has not availed himself of the service offered by the holders of the certificate under consideration. As a consequence, the holders of such certificate have failed to run their trucks to Seguin at anything like regular intervals, although the holders of such certificates have continued to serve intermediate towns between San Antonio and Seguin.

"The holders of said certificate do not desire to abandon any portion of their route permanently and offer to continue to serve Seguin and all other points on their irregular schedules if and whenever there is any necessity or request for their doing so from the persons whom they are authorized to render such service to.

"Upon the basis of that above set out, we respectfully ask that you give your opinion upon the following questions:

"(1) Whether the holders of the certificate referred to have so abandoned that portion of their certificate authorizing operations upon irregular schedules so as to require that the Commission take affirmative action to amend the certificate in question and restrict it to those routes which are being operated on regular schedules, and revoke those portions of such certificate authorizing irregular schedules.

"(2) Whether it is necessary for the holders of such certificate, in order to comply with the applicable statutes and to legally retain the portion of their certificate which is being operated upon regular schedules, to apply to the Commission and obtain permission for the amendment of their certificate to eliminate those portions of the routes which are not operated on regular schedules.

"(3) Where heretofore the Commission has issued a certificate of public convenience and necessity authorizing irregular service and irregular schedules and no fixed routes (intrastate), does the Commission have any power and authority to amend such a certificate for the purpose of bringing it outside of the field of invalidity recently pointed out in your opinion?

"(4) Where heretofore the Commission has issued a certificate of public convenience and necessity authorizing irregular service and irregular schedules and no fixed routes (interstate), does the Commission have any power and authority to amend such a certificate for the purpose of bringing it outside of the field of invalidity recently pointed out in your opinion?

"(5) Where an applicant presents proof of public convenience and necessity and of inadequacy of existing facilities and thereby obtains a certificate of public convenience and necessity (intrastate) on the theory that he is going to render a regular service and then renders irregular service, is it mandatory upon this Commission in such case to cancel his certificate?

"(6) Where an applicant presents proof of public convenience and necessity and of inadequacy of existing facilities and thereby obtains a certificate of public convenience and necessity (interstate) on the theory that he is going to render a regular service and then renders irregular service, is it mandatory upon this Commission in such case to cancel his certificate?"

Sec. 12 (b) of Article 911b, Vernon's Annotated Statutes, the Motor Carrier Act of this State, reads:

"(b) The Commission at any time after hearing had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided that the holder of such certificate or permit shall have the right of appeal as provided in this Act."

We do not believe that a carrier's failure always to operate its certificate over a particular part of its line in accordance with the terms of the certificate will always necessarily require the Commission to enter an order revoking, suspending or amending the same, regardless of reasons which might exist to justify such failure. There is left in the Commission at least a certain amount of discretion in respect to such matters. The statute does not say that such a failure will automatically work a forfeiture of the right to operate a line in connection with which such failure occurs, nor does it say that the Commission must enter an order of revocation, suspension or amendment. In the instant case, if it be found that the carrier actually stands ready to serve the operator of the picture establishments in Seguin, that it was the failure of the picture show operator and not of the carrier which has caused the cessation of service, and that the action of the carrier is reasonable under the circumstances, it is our opinion that revocation, amendment or suspension is not mandatory. We believe this also sufficiently disposes of your second question.

Your second and third questions evidently refer to our opinions Nos. 0-2608 and 0-3147, addressed to members of the Railroad Commission. Our answer to your third question is an affirmative one, conditioned upon the holder's making proper application and a finding of public necessity and of the sufficiency of the highways to be traversed. We answer your fourth question in the affirmative, conditioned upon the operator's filing a proper application, and if after hearing it be found that the roads proposed to be used will bear the traffic.

We answer your fifth question in much the same way as the first. The substitution of irregular schedules in practice would not necessarily make it incumbent upon the Commission to cancel the certificate. The circumstances might be such as to warrant the Commission's not cancelling the same.

Your sixth question is answered in the negative. The Commission's jurisdiction in the first instance extended only to the protection of the highways.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By /s/ Glenn R. Lewis

Glenn R. Lewis
Assistant


GRL:AMM/cm


APPROVED JUN 5, 1941

/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
Opinion
Committee
By /s/ BWB
Chairman